TIMOTHY COURCHAINE
United States Attorney
District of Arizona

JACQUELINE SCHESNOL
Arizona State Bar. No. 016472
DIAMOND J. ZAMBRANO
Arizona State Bar No. 036390
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Emails:jacqueline.schesnol@usdoj.gov
        diamond.zambrano@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>          v.<br><br> Shawntavia Maloney,<br><br>                    Defendant. | CR-24-00101-PHX-SMB<br><br>**THE GOVERNMENT'S SENTENCING MEMORANDUM** |

Defendant Shawntavia Maloney ("Defendant") pleaded guilty to Count 38 of the superseding indictment, False Statement During the Purchase of a Firearm. The United States has no legal objections or factual corrections to the Presentence Report ("PSR"). (Doc. 142.) The PSR calculated a Total Offense Level of 15 and Criminal History Category of I, resulting in a Sentencing Guidelines range of 18 to 24 months' imprisonment. (*Id.* at 27.) The PSR recommends twelve months and one day of imprisonment and three years of supervised release. (*Id.*) The United States recommends Defendant receive five years of probation and no custodial sentence. The United States will seek $28,646 in restitution and requests this Court set a restitution hearing within 90 days of sentencing pursuant to 18

U.S.C. § 3664(d)(5). This recommendation and request are supported by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. RELEVANT BACKGROUND

A grand jury indicted Defendant on February 11, 2025. (Doc. 1.) On April 14, 2024, Defendant pleaded guilty to Count 38 of the superseding indictment, False Statement During the Purchase of a Firearm in violation of 18 U.S.C. § 924(a)(1)(A). (Doc. 131.) Defendant agreed with the facts in her plea agreement, including:

On March 22, 2022, Defendant purchased six firearms from a Federal Firearms Licensee. To obtain the firearms, Defendant used a false address on an ATF Form 4473. Further, between approximately February 8, 2022, and March 22, 2022, Defendant purchased at least thirty-three firearms.

Around March 2021 to April 2021, Defendant knowingly devised a scheme to defraud the United States Small Business Administration by submitting false and fraudulent Paycheck Protection Program ("PPP") loan applications to (1) Benworth Capital on behalf of Zolas Products for $9,184, and (2) Harvest Bank on behalf of Zam Shootz Photography for $10,278. These payments were transmitted into Defendant's bank account by means of wire communication in interstate commerce.

## II. THE UNITED STATES' SENTENCING RECOMMENDATION

The United States respectfully requests the Court impose a sentence of five years' probation.[1] This sentence is below the Guidelines range. The sentence is sufficient but not greater than necessary to achieve the purposes of sentencing for the reasons explained below. At sentencing, the United States will dismiss the remaining counts in the Indictment as to Defendant only and dismiss the Indictment in CR-25-00195-PHX-JJT.

---

[1] The United States' recommendation is subject to change if new information is learned between the date of this filing and the sentencing hearing.

The Guidelines provide a "starting point" to determine a defendant's sentence, but the Court "may not presume that the Guidelines range is reasonable." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (quotations omitted). The Guidelines provide one of many factors for the Court to consider, along with the factors outlined in 18 U.S.C. § 3553(a). *Id.* If the Court chooses to impose a sentence outside of the Guidelines range, "[the Court] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)).

The nature and circumstances and history and characteristics of Defendant support a five-year sentence of probation. *See* 18 U.S.C. § 3553(a)(1). The United States acknowledges the concerning nature and circumstances of this offense. Defendant used a false address to purchase over thirty-three firearms in Arizona for someone else. (Doc. 133 at 7–8.) Knowing the correct address for the purchaser of firearms is essential to tracking the weapons. Some of the firearms Defendant purchased were later recovered by law enforcement in another state during crimes. (Doc. 142 at 12.) Defendant also has no prior criminal history. (*Id.* at 14.) Defendant has assisted authorities in investigating and prosecuting her own misconduct. (*Id.*)

Additionally, five years of probation reflects the seriousness of the offense and affords adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(A)–(B). As mentioned above, this is a serious offense. Regarding deterrence, the Court should consider whether a punishment provides specific deterrence to the Defendant and general deterrence to the broader public. As explained above, Defendant does not have a prior criminal history and has not committed any violations while on pretrial supervision. A sentence of five years' probation will also deter people inclined to commit similar crimes from doing so.

Last, a sentence of five years' probation is consistent with the sentences imposed on similarly situated defendants in this case. (Doc. 142 at 2.) Two of Defendant's co-defendants who were considered "average participants" received sentences of thirty-six and forty-eight months of probation. (*Id.* at 2, 12.) Another co-defendant, who was

considered the organizer, leader, manager, or supervisor of the criminal activity, received a custodial sentence of thirty-six months of imprisonment followed by one year of supervised release. (*Id.*) Defendant's conduct is more similar to the two co-defendants who received probation than the co-defendant who received a custodial sentence. (*Id.* at 12.)

## III.  <u>RESTITUTION</u>

The United States seeks $28,646 in restitution from the Defendant. The government identified two PPP loans Defendant received—and Defendant acknowledged accepting these loans—in the plea agreement: $9,184 from Benworth Capital for Zolas Products and $10,278 from Harvest Bank for Zam Shootz Photography. (Doc. 131 at 7.)  Moreover, in the plea agreement, she admitted to defrauding the Small Business Administration by submitting false and fraudulent PPP loan applications to Benworth Capital and Harvest Bank. (*Id.*) The PPP loan proceeds were deposited in Defendant's bank account in April 2021 and were depleted within one month of receiving the funds. After Defendant was indicted in CR-25-00195-PHX-JJT, the government discovered Defendant received a third PPP loan  in May 2021: $9,814 from Benworth Capital. Accordingly, the plea agreement set a restitution cap of $28,646.

Defendant argues she owes no restitution because she used the PPP loans proceeds to pay for "normal living expenses such as rent, food, gas and car expenses, telephone and others" in an "attempt to make her businesses blossom," specifically her Zam Shootz Photography and Zolas Products businesses. (Doc. 139 at 3.) The defense itemized the expenses as follows:

### Zolas Products

- Salary for social media consultant: $13,821.00 at $800.00 per month for seventeen months
- Canva: $2,244.00
- Packaging: $4,794.00
- Business cards and flyers: $333.00
- Business email: $260.00
- Second business email: $200.000
- Essential ingredients: $2,124.00

**Zam Shootz Photography**

- Camera: $690.00
- Lenses: $2,700.00
- Backdrop: $250.00
- Props: $750.00
- Film and developing process: Other costs not specified.

(Doc. 139 at 4–5.)

The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116–136, 134 Stat. 281 (2020), however, outlines limited "[a]llowable uses" for PPP loans. Eligible recipients of PPP loans can use the loans for payroll costs; health care insurance and sick leave costs; employee compensation; mortgage interest payments; rent; utilities; and interest on certain debts. *Id.* § 1102(F)(i).

None of the expenses for Zam Shootz Photography and most of the expenses for Zolas Products—Canva, packaging, business cards and flyers, business emails, and essential ingredients—qualify as "allowable uses" for PPP loans under the CARES Act. *See* Pub. L. No. 116–136, § 1102(F)(i); (Doc. 133 at 24 ¶ 101.) The only expense that arguably may qualify is the salary Defendant claims she paid for a social media consultant for Zolas Products. Even then, it may not qualify as an "allowable use" of a PPP loan because the CARES Act distinguishes between paying *employee* salaries—which are covered—and paying independent *contractors*. *See id.* § 1102(F)(i)(I)-(III), (ii)(II).

Because Defendant received these loan proceeds fraudulently and used the proceeds on non-eligible expenses this Court should impose  $28,646 in restitution. Because the amount is contested, the government requests this court set a restitution hearing. If the parties are able to reach a stipulation as to restitution, they will notify the Court as soon as possible.

## IV. <u>CONCLUSION</u>

For the above reasons, the Government respectfully requests that the Court sentence the defendant to **five years of probation**. The Government also requests that the Court set a restitution hearing.

Respectfully submitted this 10th day of November, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona


s/ Diamond J. Zambrano
DIAMOND J. ZAMBRANO
ASSISTANT U.S. Attorney